**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| PRESBYTERIAN MANORS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 09-2656-KHV |
| | ) |
| SIMPLEXGRINNELL, L.P., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendant's Motion to Compel Production of Documents and Responses to Interrogatories (Doc. 22) and Travelers Insurance Company's Motion to Quash Defendant SimplexGrinnell, L.P.'s Subpoena to Produce Documents (Doc. 35). The motions are fully briefed, and the Court is prepared to rule. For the reasons stated below, Defendant's motion to compel is granted in part and denied in part, and Travelers Insurance Company's motion to quash is denied.

## I.      Procedural Requirement to Confer

Before considering the merits of Defendant's motion to compel, this Court must first determine whether Defendant has complied with the requirements of the Federal Rules of Civil Procedure and this district's local rules regarding the movant's duty to confer with opposing counsel prior to filing a motion to compel. Fed. R. Civ. P. 37(a)(1) provides that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." D. Kan. R. 37.2 expands on the movant's duty to confer, stating "[a] 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good

faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."

In this case, the parties have exchanged detailed correspondence and had a telephone conference aimed at attempting to resolve the instant discovery dispute without judicial intervention. The Court finds Defendant has satisfied the conference requirements embodied in Fed. R. Civ. P. 37(a)(1) and D. Kan. R. 37.2.

## II.    Background

In this lawsuit, Plaintiff alleges Defendant agreed to maintain, inspect, and test a sprinkler system at one of Plaintiff's properties pursuant to a Service Agreement entered into between the parties.[1]  On or about October 16, 2008, Defendant allegedly inspected and performed related testing of the sprinkler system.[2]  Plaintiff claims Defendant failed to properly drain the sprinkler system following the inspection, which resulted in a substantial amount of water being left in the sprinkler system.[3]  The water purportedly froze, rupturing the sprinkler system's piping and causing substantial damage to Plaintiff's property.[4]  Plaintiff asserts claims for breach of express warranty, negligence, recklessness, breach of service agreement, and punitive damages.[5]

On March 18, 2010, Defendant served Plaintiff with Defendant's First Set of Interrogatories and First Request for Production of Documents ("Discovery Requests").[6]  On May 3, 2010, Plaintiff

---

[1] Compl. (Doc. 1) ¶¶ 6, 32, 36.

[2] *Id.* ¶ 6.

[3] *Id.* ¶ 8.

[4] *Id.* ¶¶ 9–10.

[5] On May 11, 2010, Judge Vratil dismissed a negligence *per se* claim.  Mem. and Order (Doc. 18).

[6] Certificate of Service (Doc. 15).

served its responses and objections to Defendant's Discovery Requests.[7]  Plaintiff objects that Defendant's Discovery Requests seek documents or information protected by the attorney-client privilege and work product doctrine and are irrelevant, unduly burdensome, and overly broad.  In the instant motion, Defendant moves for an order overruling Plaintiff's objections and compelling Plaintiff to supplement its responses.

On June 22, 2010, Defendant served non-party Travelers Insurance Company ("Travelers") with a subpoena to produce and permit inspection and copying of certain documents.  The documents sought by subpoena are nearly identical to the documents sought in Defendant's First Request for Production of Documents to Plaintiff.  Travelers, represented by the same counsel who represents Plaintiff, filed a motion to quash the subpoena, repeating many of the same arguments Plaintiff made in response to Defendant's motion to compel.

## III.    Motion to Compel

### A.    Standard

A court, for good cause, may order the discovery of any matter relevant to the litigation.[8] A party seeking discovery may move for an order compelling an answer, designation, production, or inspection if "a party fails to answer an interrogatory submitted under Rule 33" or "fails to permit inspection . . . under Rule 34."[9]

When a party files a motion to compel and asks the Court to overrule certain objections, the

---

[7] Certificate of Service (Doc. 17).  Defendant apparently gave Plaintiff two extensions of time to respond to the Discovery Requests.  Certification of Kristi L. Burmeister in Supp. of SimplexGrinnell LP's Mot. to Compel Disc. (Doc. 23) ¶ 5.

[8] Fed. R. Civ. P. 26(b)(1).

[9] Fed. R. Civ. P. 37(a)(3)(B).

objecting party must specifically show in its response to the motion to compel how each request for production or interrogatory is objectionable.[10]  By failing to address the objections in response to a motion to compel, a party fails to meet its burden to support its objections.[11]  "Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned."[12]

**B.    Moot Discovery Requests**

Plaintiff indicates it has now produced all existing documents that are responsive to Request for Production Nos. 2, 18, 19, 23, and 24.  Plaintiff also indicates it would supplement its answers to Interrogatory Nos. 5, 17, and 18 by June 16, 2010.

At the Court's request, Defendant filed a supplemental brief identifying the discovery requests it contends are still unresolved and require Court review.  Defendant asserts Plaintiff did not adequately respond to Request for Production Nos. 5, 6, 7, 8, 11, 12, 15, 16, 17, 18 and 19 and Interrogatory Nos. 13, 14 and 17.[13]

Accordingly, Defendant's motion to compel is denied as moot as to Request for Production Nos. 2, 23 and 24 and Interrogatory Nos. 5 and 18.

**C.    Objections to Discovery as Unduly Burdensome**

In its opposition to the instant motion, Plaintiff objects to Request for Production Nos. 5, 16, and 17 as unduly burdensome.  As the party asserting the objection, Plaintiff has "'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in

---

[10] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

[11] *Id*. at 671.

[12] *Cardenas v. Dorel Juvenile Grp., Inc*., 232 F.R.D. 377, 380 n.15 (D. Kan. 2005) (citing *Sonnino*, 220 F.R.D. at 641); *Cotracom Commodity Trading Co. v. Seaboard Corp*., 189 F.R.D. 655, 662 (D. Kan. 1999).

[13] *See* Def.'s Supplemental Brief (Doc. 44) at 1–2.

responding to requested discovery is unduly burdensome.'"[14] Additionally, Plaintiff has the burden to show "'not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.'"[15] This imposes an obligation on Plaintiff "'to provide sufficient detail in terms of time, money and procedure required to produce the requested documents.'"[16] Any objections that discovery is unduly burdensome must contain a factual basis for the claim,[17] and the objecting party must usually provide an "affidavit or other evidentiary proof of the time or expense involved" in responding to the discovery request.[18]

Here, Plaintiff has not attached an affidavit or otherwise attempted to demonstrate how the discovery requests at issue are unduly burdensome in terms of time, expense, or procedure. The Court has no information about the volume of documents that exist and cannot speculate on the nature of Plaintiff's purported burden in responding to those requests. Plaintiff's mere conclusory allegation is insufficient to establish undue burden.[19] Accordingly, the Court overrules Plaintiff's undue burden objections lodged in response to Request for Production Nos. 5, 16, and 17.

### D.     Specific Requests

---

[14] *G.D. v. Monarch Plastic Surgery*, No. 06-2184-CM, 2007 WL 201150, at *2 (D. Kan. Jan. 22, 2007) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)).

[15] *Heartland Surgical Specialty Hosp. v. Midwest Div., Inc.*, No. 05-2164-MLB, 2007 WL 3171768, at *2 (D. Kan. Oct. 29, 2007) (quoting *Cardenas*, 232 F.R.D. at 380).

[16] *G.D.*, 2007 WL 201150, at *2 (quoting *Horizon Holdings, L.L.C.*, 209 F.R.D. at 213).

[17] *Barnes v. Akal Sec., Inc.*, No. 04-1350-WEB, 2005 WL 3359717, at *2 (D. Kan. Dec. 9, 2005).

[18] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004).

[19] *See id.* (overruling undue burden objection where party asserting objection provided no detailed explanation, affidavit, or other proof showing that responding to discovery request would cause undue burden).

1.    **Request for Production No. 5**

Request for Production No. 5 seeks "all documents created by you or firms or agencies hired by you during your investigation of the alleged Occurrence." Although Request for Production No. 5 is drafted to include a broader scope of documents, the parties discuss this request only as it relates to insurance claim and investigation documents. In its response to the instant motion, Plaintiff objects that Request No. 5 seeks documents protected by the attorney-client privilege[20] and work product doctrine and is irrelevant and overly board.

Plaintiff, as the party asserting objections based upon work product immunity and attorney-client privilege, bears the burden of establishing that either or both apply.[21] To carry that burden, Plaintiff must make a "clear showing" that the asserted objection applies.[22] Plaintiff must "'describe in detail'" the documents or information to be protected and provide "'precise reasons'" for the objection to discovery.[23]

The Federal Rules of Civil Procedure require a fairly detailed and specific showing to

---

[20] Plaintiff did not object based upon the attorney-client privilege in its responses to Defendant's requests for production. *See* Doc. 23-2. The Court could deem this objection waived because of Plaintiff's failure to timely object. *See McCormick v. City of Lawrence*, No. 02-2135-JWL, 2005 WL 1606595, at *4 (D. Kan. July 8, 2005); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998). The Court, however, will address the merits of this objection.

[21] *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).

[22] *McCoo*, 192 F.R.D. at 680.

[23] *Id.* (quoting *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994)).

withhold discovery on privilege grounds.[24]  Fed. R. Civ. P. 26(b)(5) provides that when a party

withholds documents or other information based upon a privilege or work product immunity, the

party must "(i) expressly make the claim; and (ii) describe the nature of the documents,

communications, or tangible things not produced or disclosed – and do so in a manner that, without

revealing information itself privileged or protected, will enable other parties to assess the claim."[25]

This is typically done in the form of a privilege log.[26]

A privilege log under District of Kansas precedent should include the following:

(1)     A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

(2)     The date upon which the document was prepared;

(3)     The date of the document (if different from # 2);

(4)     The identity of the person(s) who prepared the document;

(5)     The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;

(6)     The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the

---

[24] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005).

[25] Fed. R. Civ. P. 26(b)(5).

[26] *Sprint Commc'ns Co. v. Vonage Holdings Corp.*, No. 05-2433-JWL-DJW, 2007 WL 1347754, at *2 (D. Kan. May 8, 2007).  A privilege log is not always necessary as long as the opposing party and the court can assess whether the claimed privilege applies to the document. *Farha v. Idbeis*, No. 09-1059-JTM, 2010 WL 3168146, at *4 n.11 (D. Kan. Aug. 10, 2010).  For example, a party might satisfy Rule 26(b)(5)(A)(ii) by describing a particular communication in such narrative detail that a formal privilege log is unnecessary.  *Id.*

course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

(7)     The number of pages of the document;

(8)     The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

(9)     Any other pertinent information necessary to establish the elements of each asserted privilege.[27]

Further, Plaintiff must provide sufficient information to enable the court to determine whether *each element* of the asserted objection is satisfied.[28] This burden can be met only by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory assertions or blanket claims of privilege.[29] Moreover, the objecting party has the burden to establish the existence of the privilege or immunity prior to the time the court is asked to determine its sufficiency and applicability.[30] A party's failure to meet the required showing when the trial court is asked to rule upon the existence of the privilege is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made.[31] "'The

---

[27] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 673 (internal citations omitted).

[28] *McCoo*, 192 F.R.D. at 680 (citing *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995)).

[29] *See id.*; *Nat'l Union Fire Ins. Co.*, 159 F.R.D. at 567 (citations omitted); *Am. Cas. Co. of Reading, Pa. v. Healthcare Indem., Inc.*, No. 00-2301-DJW, 2001 WL 1718275, at *2 (D. Kan. May 21, 2001).

[30] *Rural Water Sys. Ins. Benefit Trust v. Group Ins. Adm'rs, Inc.*, 160 F.R.D. 605, 608 (D. Kan. 1995).

[31] *Am. Cas. Co. of Reading, Pa.*, 2001 WL 1718275, at *2 (citing *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984)).

applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document.'"[32]

It is well settled that if a party fails to make the required showing under Fed. R. Civ. P. 26(b)(5)(A) by not producing a privilege log or by producing an inadequate one, courts may deem the privilege waived.[33] Although this result is not mandated by Rule 26(b)(5)(A) itself, the Advisory Committee clearly contemplated this sanction; it explained as follows: "'[t]o withhold materials without [providing the information required by Rule 26(b)(5)(A)] is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege . . .'"[34]

### a. Attorney-Client Privilege

Rule 501 of the Federal Rules of Evidence dictates how privilege is determined.[35] Pursuant to Rule 501, state law governs the applicability and scope of attorney-client privilege in diversity actions.[36] The attorney-client privilege is codified in K.S.A. § 60-426, and the Kansas Supreme

---

[32] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 669 (D. Kan. 2004) (quoting *Peat, Marwick, Mitchell & Co.*, 748 F.2d at 541).

[33] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 671 (citing *Employer's Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422, 428 (D. Kan. 2003)); *Haid v. Wal-Mart Stores, Inc.*, No. 99-4186-RDR, 2001 WL 964102, at *1 (D. Kan. June 25, 2001); *In re the TJX Cos., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, No. 07-1853-KHV, 2008 WL 2437558, at *4 (D. Kan. June 12, 2008).

[34] *Am. Cas. Co. of Reading, Pa.*, 2001 WL 1718275, at *3 (quoting Advisory Committee's note).

[35] *ERA Franchise Sys., Inc. v. N. Ins. Co. of New York*, 183 F.R.D. 276, 278 (D. Kan. 1998).

[36] *See* Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368–69 (10th Cir. 1997) (discussing the application of state law versus federal law to the issue of attorney-client and work product privileges); *ERA Franchise Sys., Inc.*, 183 F.R.D. at 278.

Court has summarized the elements as follows:

> "(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived."[37]

The privilege "'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'"[38]

In its responses to Defendant's Discovery Requests, Plaintiff relies upon a boilerplate objection that this request seeks documents "that are protected by work-product privilege."[39] Plaintiff did not provide a privilege log at the time it objected to Defendant's discovery requests or otherwise attempt to satisfy the requirements of Fed. R. Civ. P. 26(b)(5) by sufficiently describing the documents it seeks to protect. Moreover, Plaintiff still has not provided a privilege log to Defendant or offered any reason for its failure to do so. In short, Plaintiff does not appear to have made any good faith attempt to comply with Fed. R. Civ. P. 26(b)(5).

Plaintiff appears to believe that Request for Production No. 5 necessarily seeks information protected by the attorney-client privilege, and thus, it is not required to produce a privilege log or otherwise support its objection. This District has rejected such an approach. As Judge O'Hara explains:

---

[37] *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 689 (Kan. 2000) (quoting *State v. Maxwell*, 691 P.2d 1316, 1319 (Kan. Ct. App. 1984)).

[38] *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *6 (D. Kan. Jan. 6, 1998) (quoting *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995)).

[39] Doc. 23-2. As discussed in footnote 20, Plaintiff argues, in response to the instant motion, that this request also seeks information protected by the attorney-client privilege.

There has been *no* evidence presented that plaintiffs ever produced a privilege log with regard to the subject discovery requests. Even if plaintiffs believed the information sought was clearly privileged, they were still obligated under Fed. R. Civ. P. 26(b)(5)(A) to provide a privilege log. As stated in *Haid v. Wal-Mart Stores, Inc.,* "the question whether materials are privileged is for the court, not the defendant [in this case, plaintiffs], to decide, and the court has the right to insist on being presented with sufficient information to make that decision." The court finds any claim of privilege plaintiffs may have asserted has been waived.[40]

In response to the instant motion, Plaintiff's only proffered basis for invoking the attorney-client privilege is that "substantial portions of the claims file include communications with counsel, which are not discoverable."[41] Plaintiff, however, has not provided any affidavits or any other evidence to support this claim.[42] Morever, not every communication between an attorney and client is privileged; only confidential communications made for the purpose of seeking or giving legal advice are protected.[43] Plaintiff has not established that the documents sought by Defendant meet these basic and threshold requirements. Plaintiff has made no showing that the purpose of the allegedly protected communications was to give or seek legal advice. Further, the Court has no information about who authored the purportedly privileged documents, the recipients of those documents, the dates the documents were created, or a description of the documents. Plaintiff has

---

[40] *In re the TJX Cos., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, No. 07-1853-KHV, 2008 WL 2437558, at *4 (D. Kan. June 12, 2008) (emphasis in original).

[41] Plaintiff Presbyterian Manor, Inc.'s Mem. in Opp'n to Def.'s Mot. to Compel Produc. of Docs. and Responses to Interrogs. (Doc. 26) at 4.

[42] *See Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994) (stating that the party seeking to establish the privilege must make an evidentiary showing based on competent evidence).

[43] *See* K.S.A. 60-426 (listing elements of privilege under Kansas law); *see also New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 443 (D. Kan. 2009).

not even demonstrated that it holds the privilege rather than its insurer. As a result, Plaintiff has failed to meet its burden to clearly show that the attorney-client privilege applies to any documents sought in Request for Production No. 5.[44] Accordingly, the Court overrules Plaintiff's objection.

### b. Work Product

Plaintiff also objects that Request for Production No. 5 seeks information protected by the work product doctrine. In diversity cases, work product protection is still governed by the uniform federal standard outlined in Fed. R. Civ. P. 26(b)(3).[45] To establish work product protection, Plaintiff must show that: "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for

---

[44] *See Farha v. Idbeis*, No. 09-1059-JTM, 2010 WL 3168146, at *4 (D. Kan. Aug. 10, 2010) (overruling objections based upon attorney-client privilege and work product doctrine because party asserting objections did not provide the court with sufficient information to determine whether the privileges applied to the withheld documents and, instead, relied on conclusory assertions); *Moses v. Halstead*, 236 F.R.D. 667, 676 (D. Kan. 2006) (overruling objections based on work product doctrine because defendant made only a blanket assertion the privilege applied and did not provide a privilege log or other sufficient description of the documents to enable the court to determine the applicability of the claimed privilege); *In re the TJX Cos., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2008 WL 2437558, at *4–*5 (finding plaintiffs waived any claim of attorney-client privilege because they did not produce a privilege log or provide the court with sufficient information to determine the existence of the privilege); *Haid v. Wal-Mart Stores, Inc.*, No. 99-4186-RDR, 2001 WL 964102, at *1–*2 (D. Kan. June 25, 2001) (affirming Magistrate Judge's order that defendant waived any privileges by failing to provide a privilege log); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 661–62 (D. Kan. 1999) (stating the court could have deemed the attorney-client privilege and work product immunity objections waived because defendants never provided a privilege log); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 667–69 (D. Kan. 2004) (declining to reconsider its ruling that defendants had waived the attorney-client privilege and work product immunity after they had asserted only general objections and failed to provide the court with a privilege log or other description upon which it could determine that each element of the privilege or immunity had been satisfied).

[45] *Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3).") (citations omitted).

a party or a representative of that party."[46]

The work product doctrine protects from discovery those documents, things and mental impressions of a party or his representative, particularly his attorney, developed in anticipation of litigation.[47] The doctrine is not intended to protect work prepared in the ordinary course of business or investigative work unless it was done so under the supervision of an attorney in preparation "for the real and imminent threat of litigation or trial."[48] For the doctrine to apply, there must be a real and substantial probability that litigation will occur at the time the documents were created.[49]

There are two components in determining whether documents are prepared "in anticipation of litigation."[50] The first is the causation requirement – the document in question must have been created because of the anticipation of litigation, i.e. to prepare for litigation or for trial; the second component imposes a reasonableness limit on a party's anticipation of litigation – the threat of litigation must be "real" and "imminent."[51] Courts look to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product. Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work

---

[46] *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (citing Fed. R. Civ. P. 26(b)(3)).

[47] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007).

[48] *Id.*

[49] *Id.*

[50] *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998).

[51] *Id.*

product doctrine.[52]

To support its work product objection, Plaintiff contends, "Almost immediately following the loss, it was apparent that the loss . . . was the result of a third-party, later determined to be Simplex. From that point, all documentation was generated in anticipation of litigation with the responsible party." As discussed above, however, Plaintiff has not provided a privilege log or any other evidence, such as an affidavit, to support this claim. Plaintiff cannot establish work product protection through such wholly unsupported factual assertions.[53]

Moreover, the fact that a party anticipates litigation does not make all documents thereafter generated subject to work product protection.[54] A party claiming work product protection still must demonstrate the document was prepared principally or exclusively to assist in anticipated or ongoing litigation; that party must establish the underlying nexus between the preparation of the document and the specific litigation.[55] As explained in *Zullig v. Kansas City Power & Light Co.*:

"The mere contingency that litigation may result is not determinative.

_____

[52] *Id.*

[53] *See U. S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL, 2008 WL 2548129, at *7 (D. Kan. June 23, 2008) (overruling work production objection because plaintiff, in its privilege log, relied only on conclusory assertions the documents were created in anticipation of litigation and did not provide sufficient information for the court to determine whether the materials were created in the ordinary course of business); *Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 539 (D. Kan. 1989) (holding that plaintiff did not meet his burden to establish work product protection because he relied on bare conclusions, unsupported by affidavit or other specific explanation); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000) (holding that defendant failed to establish work product protection because it relied on conclusory allegations not supported by affidavits or other evidence); *Disidore v. Mail Contractors of Am., Inc.*, 196 F.R.D. 410, 414 (D. Kan. 2000) (holding that defendant's assertions of work product were not supported by competent evidence).

[54] *See Marten*, 1998 WL 13244, at *11.

[55] *Id.*

14

> If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is producible . . . . The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product. . . . [T]he primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation."[56]

Further, many courts, including the District of Kansas, have observed that applying the work product doctrine to documents prepared by insurance companies during claims investigations is difficult because the nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured, and thus pre-litigation is the routine business of insurance companies.[57] "'Courts generally have held that reports made and statements taken by an insurance adjuster for an insurance company in the normal course of investigating a claim are prepared in the regular course of the company's business and, therefore, not in anticipation of litigation or for trial.'"[58] There is substantial precedent for this position.[59] As one court has explained:

> An insurance company by the nature of its business is not called into action until one of its insured has suffered some form of injury and has a potential claim against some other party and/or the insurer itself. At this point, the insurer must conduct a review of the factual data underlying the claim, presumably through the talents of agents

---

[56] *Zullig v. Kansas City Power & Light Co.*, No. 87-2342, 1989 WL 7901, at *4 (D. Kan. Jan. 17, 1989) (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982)).

[57] *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007).

[58] *Am. Banker's Ins. Co. of Florida v. Colorado Flying Academy, Inc.*, 97 F.R.D. 515, 517 (D. Colo. 1983) (quoting *Hawkins v. District Court, Fourth Judicial District*, 638 P.2d 1372, 1376–77 (Colo. 1982)).

[59] *Id.* (citing various cases in support).

or employees who summarize the data for middle-or upper-management, the latter deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter. The logical absurdity of the plaintiff's position is that, under its theory, the amendments to the discovery rules which were believed to be a liberalization of the scope of discovery would be a foreclosure of discovery of almost all internal documents of insurance companies relating to the claims of insureds. We do not believe that Rule 26(b)(3) was designed to so insulate insurance companies merely because they always deal with potential claims.[60]

Here, Plaintiff has not demonstrated that any documents contained within the insurance claims and investigation files were created "because of" litigation, rather than for processing Plaintiff's claim. Plaintiff has not provided any information about who specifically within its organization was aware of the possibility of litigation, how and when that individual or individuals came to this understanding, who prepared the documents sought to be protected, at whose direction those documents were prepared, the purpose of creating the documents, or any description of the purportedly protected documents.[61] Plaintiff has not provided the Court with sufficient information to determine whether any of the documents are subject to work product protection. Accordingly, the Court overrules this objection.

### c.    Relevance and Over Breadth

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any

---

[60] *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 373 (N.D. Ill. 1972).

[61] *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005) (internal quotations omitted) (describing required contents of privilege log); *Disidore v. Mail Contractors of Am., Inc.*, 196 F.R.D. 410, 414 (D. Kan. 2000) (overruling work product objection because the affidavit submitted by defendant did not provide any information about who directed preparation of the documents).

nonprivileged matter that is relevant to any party's claim or defense. . . ."[62] Relevant information need not be admissible at trial so long as it is reasonably calculated to lead to the discovery of admissible evidence.[63] Relevance is broadly construed at the discovery stage of litigation, and a "request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[64] Therefore, discovery should ordinarily be allowed "'unless it is clear that the information sought can have no possible bearing'" on a claim or defense of a party.[65]

There is no presumption in the Federal Rules of Civil Procedure that a discovery request is relevant.[66] The proponent of a discovery request must, in the first instance, show the relevance of the requested information to the claims or defenses in the case.[67] In many instances, relevance is apparent on the face of the request because relevance is liberally construed in discovery.[68] When relevancy is not readily apparent, the proponent has the burden of showing the relevancy of the discovery request.[69]

If the requesting party meets its initial burden of demonstrating relevance, the burden shifts

---

[62] Fed. R. Civ. P. 26(b)(1).

[63] *Id.*

[64] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[65] *Id.*

[66] *Thompson v. Jiffy Lube Intern., Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

[67] *Id.*

[68] *Id.*

[69] *Id.*; *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 309 (D. Kan. 1996).

to the party resisting discovery to establish lack of relevance by demonstrating that the requested discovery either (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery.[70]

In its Complaint, Plaintiff claims Defendant failed to properly drain a sprinkler system as part of a contracted-for inspection, which resulted in a substantial amount of water being left in the sprinkler system.[71] The water allegedly froze, rupturing the sprinkler system's piping and causing substantial damage to Plaintiff's property.[72]

Defendant argues the claims or investigation files are relevant because they contain documents that will assist Defendant in verifying the damages sustained by Plaintiff. The Court agrees. Plaintiff's insurer likely investigated the events surrounding the incident, including inquiring into the extent of the damages sustained by Plaintiff and the cause of the incident. For example, the claims file is likely to contain documents describing the extent of damage to Plaintiff's property, various repairs performed, and the cost of those repairs. In response to Interrogatory No. 14, Plaintiff indicates it sustained $324,672.49 in property damages. Defendant is entitled to know what makes up this figure, and the insurance claims file will likely contain documents relevant to this issue. Because the insurance claims or investigation files are likely to contain information regarding the cause and scope of Plaintiff's damages, Request for Production No. 5 appears to be facially relevant.

---

[70] *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2004).

[71] Compl. (Doc. 1) ¶ 8.

[72] *Id.* ¶¶ 9–10.

Thus, the burden shifts to Plaintiff to demonstrate the request is irrelevant.[73]  Plaintiff does not deny the claims file contains documents concerning the cause of the incident or the extent of Plaintiff's damages.  Rather, Plaintiff argues the relevance of the requested documentation is not apparent because the insurer is not a party to this action.  The fact that some documents were prepared by a third party, however, does not render them irrelevant.  The contents of the documents could still shed light on the cause and scope of any damage.

Plaintiff also objects to producing any documents within the claims file that reflect the amounts it was paid by its insurer.  Plaintiff contends these amounts not probative of the damages Plaintiff will be able to recover from Defendant.  Plaintiff essentially argues the calculation of damages made by an insurance company is different than the calculation of damages in a tort action.  The Court agrees that an insurer's calculation of the amounts due under an insurance policy is not necessarily equivalent to the damages available in tort.  Additionally, in Kansas, the common law collateral source rule provides that "'benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer'" in a tort action.[74]  Thus, the Court agrees that Plaintiff's claim for tort damages is not necessarily limited to the payments it received from its insurer or otherwise reduced by those amounts.  The payments made by Plaintiff's insurer, however, may still be relevant to other issues in this case.

Here, the parties dispute whether Plaintiff's insurer has a subrogation interest.  Defendant

---

[73] *See Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. at 640.

[74] *Lexington Ins. Co. v. Western Roofing Co.*, 316 F. Supp. 2d 1142, 1152 (D. Kan. 2004) (quoting *Rose v. Via Christi Health Sys., Inc.*, 78 P.3d 798, 802 (Kan. 2003)).  Plaintiff also asserts breach of contract claims.  The collateral source rule appears to apply in a breach of contract case involving a subrogation interest.  *Id.*

contends this is an issue because the Service Contract entered into between the parties contains a provision by which Plaintiff "validly waived its right to subrogation" and that "the agreed-upon subrogation waivers would defeat any subrogation claim by [Plaintiff's insurer]."

Plaintiff states that no other entity or individual has a subrogation interest in the outcome of this litigation. Plaintiff explains that during the claims process, disputes arose between Plaintiff and its insurer regarding the insurer's liability to Plaintiff. Plaintiff indicates any payments that have been made by its insurer are pursuant to a loan receipt agreement, but does not further describe this agreement.

In determining the real party in interest in subrogation cases, a leading treatise has summarized:

> In some instances it may not be clear that the insurer has been subrogated. For example, under a procedure known as a "loan receipt," the insurer lends the insured the amount due on the policy, and the insured pays it back only to the extent that the insured is able to obtain a recovery against defendant. Technically the insurer is not the real party in interest, since it has not paid the insured's claim and therefore is not subrogated to the insured's rights.

> Whether the insurer may sue in the name of its insured under a loan-receipt arrangement depends on whether the court is willing to accept the transaction at face value, either on the basis of its own evaluation of the transaction or in terms of state law in diversity cases. If the loan is treated as genuine, there is no basis for subrogation and the action may be brought in the insured's name. But, if the court views the loan as a sham and as actually constituting payment of the insured's claim, then the insurer is subrogated and must sue in its own name. When the loan-receipt arrangement is sanctioned by state law, however, the courts have accepted the characterization the parties have given to their transaction and have held the insured to be the real party in interest.[75]

Courts in Kansas have upheld loan receipt agreements as valid loans based upon the specific

---

[75] 6A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1546 (3d ed.)

facts of those cases.[76]  Based upon the instant motion and accompanying briefs, the Court cannot determine whether the loan receipt agreement in this case is a valid loan or represents payment of Plaintiff's claim.  At this stage of the litigation, Defendant is not prevented from arguing the loan receipt agreement constitutes payment of Plaintiff's claim, such that there is a subrogation interest. The amounts paid by Plaintiff's insurer could be relevant to establishing its subrogation interest, if any.

Plaintiff further contends whether there is a subrogation interest is irrelevant because Judge Vratil previously resolved this issue in her May 11, 2010 Order.   It is unclear whether Defendant's waiver of subrogation argument was previously resolved in Judge Vratil's May 11, 2010 Order as Plaintiff suggests.  As a result, the Court cannot conclude that payments from Plaintiff's insurer have "no possible bearing" on a claim or defense of a party.

Plaintiff also contends Request for Production No. 5 is overly broad.  The Court does not find Request for Production No. 5 to be facially over broad as limited to the insurance claims file and investigation documents.   Unless a request is overly broad on its face, the party resisting discovery has the burden to support its over breadth objection.[77]   Accordingly, Plaintiff has the burden to support its over breadth objection.

Plaintiff cites *Allstate Property & Casualty Insurance Co. v. Salazar-Castro* for the proposition that a party seeking an insurance claims file is only entitled to the portions of the claims file relevant to the litigation and urges this Court to limit production of the claims file.  In *Allstate Property & Casualty Insurance Co.*, the court sustained an objection to producing an entire claims

---

[76] *See, e.g.*, *Hiebert v. Millers' Mut. Ins. Ass'n of Illinois*, 510 P.2d 1203 (Kan. 1973).

[77] *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661 (D. Kan. 2004).

file because the claims file contained information about reserves, staffing assignments, and attorney invoices, which were irrelevant to the issues in that case.[78] In that case, the objecting party identified for the court the documents contained within the claims file.[79] Thus, the court could ascertain whether the claims file contained any irrelevant documents.

Here, in contrast, Plaintiff has not identified the types of documents contained within the claims file that are purportedly irrelevant. The Court has no information that the claims file of Plaintiff's insurer contains documents similar to those found irrelevant in *Allstate Property & Casualty Insurance Co.* The Court will not speculate the claims file contains irrelevant documents. In sum, Plaintiff has not met its burden to demonstrate the request is overly broad.

Accordingly, Plaintiff shall produce all responsive documents within ten (10) days of this Order.

### 2. Request for Production Nos. 6 and 8.[80]

Request No. 6 states, "With regard to your investigation of how the Occurrence took place, please produce all photographs . . . and other visual representations or documents that refer to or relate to the Occurrence, the sprinkler system and/or any real or personal property alleged to be damaged by the Occurrence." Request No. 8 seeks all photographs of the "damaged areas of the building and damaged areas of the sprinkler system after the Occurrence, but before repairs were

---

[78] *Allstate Prop. & Cas. Ins. Co. v. Salazar-Castro*, No. 08-2110-CM-DJW, 2009 WL 928601, at *3 (D. Kan. Apr. 3, 2009).

[79] *Id.*

[80] In its supplemental brief, Defendant also appears to indicate Request for Production No. 7 is still outstanding. Request No. 7 seeks all photographs of the damaged building before the Occurrence. Defendant, however, did not move to compel any further response to this request in its original motion. Accordingly, the Court will not consider this request in ruling upon Defendant's motion to compel.

initiated."

In its initial responses, Plaintiff objected to Request for Production Nos. 6 and 8 based upon the "attorney/client work product privilege."  In response to the instant motion, Plaintiff indicates it will produce all "responsive photographs not taken in anticipation of litigation by June 16, 2010."

Request for Production No. 6, however, is not limited to photographs.[81]  It seeks "all photographs, plats, plans, diagrams, videotapes, or other visual representations or documents . . ." Additionally, Plaintiff has not demonstrated or even attempted to show the materials sought in Request for Production Nos. 6 and 8 qualify for work product protection.[82]  Plaintiff was required to establish the existence of the work product immunity in response to the instant motion.[83]  Thus, Plaintiff's work product objection is overruled.  Accordingly, Plaintiff shall produce *all* responsive documents within ten (10) days of this Order.

### 3.      Request for Production No. 12[84]

Request for Production No. 12 states:

> Produce all written statements and/or interviews with persons associated in any way with the sprinkler system, any witness to the Occurrence, and/or any repair or replacement of the sprinkler system or its components following the Occurrence.

---

[81] Request for Production No. 8 seeks only photographs.

[82] *See Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("A mere allegation that the work product doctrine applies is insufficient.").

[83] *See Rural Water Sys. Ins. Benefit Trust v. Group Ins. Adm'rs, Inc.*, 160 F.R.D. 605, 608 (D. Kan. 1995).

[84] In its supplemental brief, Defendant indicates Request for Production No. 11 is still outstanding.  Defendant, however, did not move to compel any further response to this request in its original motion.  Accordingly, the Court will not consider this request in ruling upon Defendant's motion to compel.

In response to the instant motion, Plaintiff states it "has agreed to produce statements taken from representatives of Simplex, if any, by June 16, 2010. Any statements taken from other witnesses qualify for work product protection because they were obtained 'in anticipation of litigation or for trial by or for another party or by of for that other party's representative.' K.S.A. 60-226(b)(3)."[85]

Similar to the requests discussed above, Plaintiff's conclusory assertions are insufficient to establish work product protection. Accordingly, the Court overrules Plaintiff's objection. Plaintiff shall produce *all* responsive documents within ten (10) days of this Order.

### 4.    Request for Production No. 15

Request for Production No. 15 states: "With regard to insurance policies applicable to the Occurrence, produce complete copies of insurance policy(ies) providing for reimbursement, in whole or in part, to insured persons or entities due to the aforementioned Occurrence."

As noted above, the parties dispute whether Plaintiff's insurance carrier has a subrogation interest in this lawsuit. The Court believes the insurance policy could be probative of whether there is a subrogation interest in this suit. As a result, the Court cannot conclude the insurance policy has "no possible bearing" on a claim or defense of a party, and Plaintiff's objection is overruled. Accordingly, Plaintiff shall produce all such policies within ten (10) days of this Order.

### 5.    Request for Production Nos. 16–17

Request for Production No. 16 states:

> With regard to insurance policies providing for reimbursement to insured persons or entities due to the Incident, produce all files, including but not limited to: (1) claims files relating to the

---

[85] As previously discussed, Fed. R. Civ. P. 26(b)(3) governs work product protection, not state law.

Occurrence, its cause and adjustment; (2) underwriting files relating to the procurement of insurance, the ratings of the risk and the setting of the premium; and (3) loss control files relating to inspections of the insured's premises by the insurance company or its representative to reduce the risk of loss.

Request for Production No. 17 states: "With regard to insurance policies providing for reimbursement to insured persons or entities due to the Occurrence, produce the entire insurance investigation file applicable to Occurrence."

Plaintiff objects that Request for Production Nos. 16 and 17 seek information protected by the attorney-client privilege and work product doctrine and are irrelevant and overly broad. For the reasons discussed previously concerning Request for Production No. 5, the Court overrules Plaintiff's objections based upon the attorney-client privilege and work product doctrine.

Request for Production No. 17 and the claims file referenced in Request for Production No. 16 appear to be substantially similar to the documents sought in Request for Production No. 5 and are relevant for the same reasons. The documents contained within these files could contain information on the cause and extent of the alleged damage to Plaintiff's property. Accordingly, Plaintiff shall produce all responsive documents within ten (10) days of this Order.

The relevance of Request for Production No. 16 as it relates to the underwriting files and loss control files is not readily apparent to the Court. Accordingly, Defendant bears the burden of demonstrating the relevance of this request at it relates to these categories of documents. Defendant contends Plaintiff's fire suppression system froze because it was pitched improperly and froze on prior occasions. According to Defendant, insurance companies frequently evaluate fire suppression systems installed in a property when evaluating the risk of loss associated with that property. Thus, Defendant argues the underwriting and loss control files will contain information regarding

installation and maintenance of Plaintiff's fire suppression systems. Plaintiff does not refute the requested documents contain this information. Accordingly, the Court finds the requested files relevant to the extent they contain information evaluating Plaintiff's fire suppression system.

Plaintiff indicates it has already produced all loss-control documents relating to the fire suppression system contained in the underwriting file and believed this satisfied a prior agreement between the parties. In its reply, Defendant does not address why Plaintiff's production is deficient. Further, in its supplemental brief, Defendant does not indicate there is anything outstanding with regard to production of the loss control or underwriting files. Because the parties appear to have resolved this issue, the Court will not compel Plaintiff to produce further documents from the underwriting or loss control files.

### 6.     Request for Production Nos. 18–19.

In response to the instant motion, Plaintiff indicates it has produced all existing documents that are responsive to Request for Production Nos. 18 and 19. Defendant contends Plaintiff still has not produced all of the responsive documents sought in these requests.

Request for Production No. 18 seeks, "[a]ll documents supporting your claims for damages allegedly resulting from the Occurrence, including, but not limited to, estimates, bills, invoices, receipts, and/or other related writings that support the claims for alleged damages sustained as a result of the Occurrence." Defendant argues Plaintiff has not produced any documents reflecting communications with its insurer regarding Plaintiff's damages.

In the context of Request No. 18, the Court interprets the term "support" to mean "basis or foundation."[86] Under the Court's interpretation, Defendant is seeking the documents upon which

---

[86] *Black's Law Dictionary* 1453 (7th ed. 1999).

Plaintiff bases its claim for damages. The Court cannot determine whether the category of documents identified by Defendant are responsive to Request No. 18. It is possible Plaintiff does not base its claim for damages upon any communications between it and its insurer, and thus, there are no further responsive documents.

Because Plaintiff has not asserted or supported any objections to this request in response to the instant motion, Plaintiff is ordered to produce all documents sought in Request for Production No. 18, as interpreted by the Court, or indicate that no further responsive documents exist within ten (10) days of this Order.[87]

Request for Production No. 19 seeks, "[a]ll documents reflecting payment(s) made by you and/or your insured to any individual(s) and/or entity involving repair(s) related to t his Occurrence, including the amount(s) and date(s) paid."[88] Defendant indicates Plaintiff has not produced any documents reflecting payments from its insurer for Plaintiff's damages or loss.

As drafted, Request No. 19 is broad enough to include payments made by Plaintiff's insurer to Plaintiff or any other entity involving repairs related to the occurrence. Because Plaintiff has not asserted or supported any objections to this request in response to the instant motion, Plaintiff is ordered to produce all documents sought in Request for Production No. 19, as interpreted by the Court, or indicate that no further responsive documents exist within ten (10) days of this Order.

---

[87] *See Cardenas v. Dorel Juvenile Grp., Inc*., 232 F.R.D. 377, 380 n.15 (D. Kan. 2005) ("Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned.").

[88] Defendant's First Set of Requests for Production of Documents define "you" to included Plaintiff's insurer.

### 7. Request for Production No. 20[89]

Request for Production No. 20 states:

> Produce any documents supporting the allegations in Paragraph 18 of the Complaint that SimplexGrinnell was negligent, careless and at fault for failing to properly maintain, inspect, test, locate all of the drainage "low points", warn Plaintiff that excess water was left in the system, not properly draining the sprinkler system, and maintain, inspect, test, and inspect the sprinkler system in accordance with NFPA 13 and 25.

Plaintiff objects that Request for Production No. 20 seeks documents protected by the attorney-client privilege and work product doctrine. As already discussed throughout this Order, Plaintiff makes no showing the documents sought in these requests are protected by the attorney-client privilege or work product privilege. Morever, the Court is not clear how this request implicates the attorney-client privilege. This request is similar to Fed. R. of Civ. P. 26(a)(1)(A)(ii), which requires a party to provide a "a copy . . . of *all* documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . ."[90] Similarly, the Court does not believe this request implicates the work product doctrine.[91] In any event, Plaintiff is ordered to produce all responsive documents within ten (10) days of this Order.

### 8. Interrogatory No. 13

Interrogatory No. 13 states:

---

[89] In its supplemental brief, Defendant did not identify Request for Production No. 20 as still outstanding. Defendant, however, raised this request in its initial memorandum, and the Court is not sure whether the parties have resolved the dispute. Accordingly, the Court will address the request in this Order.

[90] Emphasis added.

[91] *See Moses v. Halstead*, 236 F.R.D. 667, 678 (D. Kan. 2006) (holding that a request seeking "all documents which support [a party's] defenses" did not improperly call for counsel to divulge his thought process or mental impressions").

> Do you contend that the sprinkler system, sprinkler head, valves, or any component of the sprinkler system was defective in its design? If so, state all facts and circumstances, upon which you base such contention, identify all possessing relevant knowledge supporting such contention, and identify all writings or documents possessing relevant knowledge supporting such contention.

Plaintiff asserts Interrogatory No. 13 seeks information subject to the work product doctrine but provides no further explanation. As discussed elsewhere in this Order, Plaintiff's conclusory assertion is insufficient to establish the elements of the work product doctrine.[92]

Moreover, the work product doctrine "does not apply to contentions and supporting facts."[93] "An interrogatory may reasonably ask for the material or principal facts which support a party's contentions in the case."[94] The purpose of a contention interrogatory "is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position."[95] Defendant is entitled to know the theories under which Plaintiff is proceeding and the factual basis of Plaintiff's claims.[96] The Court, however, will limit this interrogatory to the material or principal facts supporting the contention, rather than requiring

---

[92] *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000).

[93] *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625953, at *3 (D. Kan. Oct. 5, 1995) (internal citations omitted).

[94] *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2009 WL 2058759, at *2 (D. Kan. July 15, 2009) (internal citations omitted).

[95] *Id.* (internal citations omitted).

[96] *See Audiotext Commc'ns Network, Inc.*, 1995 WL 625953, at *1 (internal citations omitted).

Plaintiff to describe "all" facts.[97]

Plaintiff also argues the requested information "is properly considered expert testimony that is appropriately disclosed in accordance with the mandates of Fed. R. Civ. P. 26(a) and the Court's scheduling order." Although Plaintiff's expert might identify additional information or documents responsive to this request, Plaintiff is still required to respond now with whatever responsive information exists.[98]

### 9.      Interrogatory No. 14

Interrogatory No. 14 states:

> For each item of real or personal property that was allegedly damaged, please provide an itemized statement of all repair, replacement, or clean up costs, and identify every person or entity performing such repair, replacement, or cleanup or by whom such repair, replacement, or cleanup costs were estimated, describing the specific nature of the repair, replacement, or clean up, and listing all amounts paid, owed or estimated for each such item.

Defendant contends Plaintiff has never provided an itemized list of its damages.

Plaintiff initially answered this interrogatory by indicating it sustained $324,672.49 in property damage and would supplement its answer as new information became available. In response to the instant motion, Plaintiff indicates it has "produced all responsive documentation in its possession" in accordance with Fed. R. Civ. P. 33(d) and directs Defendant to the documents

---

[97] *Western Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2001 WL 1723817, at *1 (D. Kan. Dec. 4, 2001) ("a contention interrogatory which seeks 'all facts'. . . is overly broad and unduly burdensome on its face").

[98] *See In re Urethane Antitrust Litig.*, 2009 WL 2058759, at *2 (requiring plaintiffs to answer contention interrogatory with "'whatever information they have'" even though their expert might subsequently identify additional responsive information) (internal citations omitted); *see also Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 538 (D. Kan. 1989).

produced in response to Request for Production Nos. 18–19.[99]  Fed. R. Civ. P. 33(d) states:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
>> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>>
>> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

There is no evidence before the Court that the burden of determining the answer to Interrogatory No. 14 is substantially the same for either party.  Morever, Plaintiff has not complied with Fed. R. Civ. P. 33(d) by specifically identifying the records to be reviewed, either in its initial response, which made no reference to where the documents were located, or in response to the instant motion.[100]  Accordingly, Plaintiff's reference to its production of documents is insufficient to answer Interrogatory No. 14.  Plaintiff has not objected to this discovery request, and the Court finds no basis for Plaintiff's failure to provide an itemized list of its damages or the other information requested in Interrogatory No. 14.  Accordingly, Plaintiff is ordered to itemize its damages and provide all other information requested in Interrogatory No. 14 within ten (10) days

---

[99] Plaintiff Presbyterian Manor, Inc.'s Mem. in Opp'n to Def.'s Mot. to Compel Produc. of Docs. and Responses to Interrogs. (Doc. 26) at 9.

[100] *See Cont'l Illinois Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 687 (D. Kan. 1991) (holding that plaintiff failed to answer an interrogatory directed at identifying the precise amount of damages sustained because plaintiff merely referenced the documents where the information was found and did not specifically identify the page number or paragraphs in the documents where the information could be located).

of this Order.

### 10. Interrogatory No. 17

Interrogatory No. 17 states:

> If you have made a claim or been paid on a claim for benefits under any insurance policy to recover any benefit related to the Occurrence, state the name and address of the entity to whom such claim was made, the date such claim, and the nature and amount of any payment received. If you seek damages above and beyond payments received and/or claimed from your insurer, state the nature and amount of any damages sought.

In response to the instant motion, Plaintiff indicates it would supplement its answer by June 16, 2010. Defendant indicates Plaintiff has not identified the amount of payment it received from its insurer as result of the Occurrence. The Court finds this request as drafted is broad enough to include the amount of any payments received pursuant to the loan receipt agreement.

The Court was not provided with a copy of Plaintiff's supplemental response to Interrogatory No. 17. Therefore, the Court does not know how Plaintiff answered this request. Because Plaintiff has not asserted or supported any objections to this request in response to the instant motion, Plaintiff is ordered to fully answer Interrogatory No. 17 within ten (10) days of this Order.[101]

### D. Summary

Defendant's Motion to Compel is denied as moot as to Request for Production Nos. 2, 23 and 24 and Interrogatory Nos. 5 and 18.

Defendant's Motion to Compel is granted in part and denied in part as to Request for Production No. 16.

---

[101] *See Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 380 n.15 (D. Kan. 2005) ("Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned.").

Defendant's Motion to Compel is granted as to Request for Production Nos. 5, 6, 8, 12, 15, 17, 18, 19, and 20 and Interrogatory Nos. 13, 14 and 17.

Plaintiff is ordered to produce all responsive documents and provide answers to these discovery requests within ten (10) days of this Order.

### E.    Attorney Fees and Expenses

Under Federal Rule of Civil Procedure 37(a)(5)(C), if a motion to compel is granted or if disclosure or requested discovery is provided after the motion was filed, the court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in making the motion.  Additionally, if a motion to compel is granted in part and denied in part, the court may apportion the reasonable expenses for the motion.

The Court orders Plaintiff to show cause in writing to the undersigned within ten (10) days of this Order why it should not be taxed with Defendant's reasonable expenses, including attorney fees, associated with filing the instant motion to compel.  Within ten (10) days of this Order, Defendant shall file a memorandum of requested expenses indicating the dollar amount of reasonable expenses it is claiming, along with any documentary support for the requested amount, it incurred in making this motion to compel.  Plaintiff, thereafter, shall have fourteen (14) days to file any response contesting the reasonableness of Defendant's claimed expenses.  Defendant, thereafter, shall have fourteen (14) days to file a reply.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Production of Documents and Responses to Interrogatories (Doc. 22) is hereby granted in part and denied in part consistent with this Order.

**IT IS FURTHER ORDERED** that Plaintiff shall show cause in writing to the undersigned

within ten (10) days of this Order why it should not be taxed with Defendant's reasonable expenses, including attorney fees, associated with filing the instant motion to compel. Within ten (10) days of this Order, Defendant shall file a memorandum of expenses it incurred in filing this motion to compel.

## IV.    Motion to Quash

On June 22, 2010, Defendant served non-party Travelers (Plaintiff's insurer) with a subpoena to produce and permit inspection and copying of eleven categories of documents. The documents sought by the subpoena are nearly identical to the documents sought in Defendant's First Request for Production of Documents already discussed in this Order. Travelers, represented by the same counsel who represents Plaintiff, has filed a motion to quash the subpoena, repeating many of the same arguments Plaintiff made in response to Defendant's motion to compel. Travelers contends the subpoena is unduly burdensome, seeks irrelevant information, and requests the production of documents protected by the attorney-client privilege and work product doctrine.

### A.    Standard

The appropriate procedure to command a non-party to produce documents is to serve a subpoena pursuant to Fed. R. Civ. P. 45.[102] Fed. R. Civ. P. 45 provides that a court must quash or modify a subpoena that requires disclosure of privileged or other protected matter or subjects a person to undue burden. The party moving to quash a subpoena has the obligation to demonstrate undue burden[103] and to establish the existence and applicability of any privilege asserted.[104]

---

[102] *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 540 (D. Kan. 2006).

[103] *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996)

[104] *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 279 (10th Cir. 1983).

**B.    The Document Requests**

The subpoena served on Travelers seeks the following categories of documents:

1.    The insurance policy under which the December 23, 2008 loss was paid;

2.    The entire claims file for the December 23, 2008 loss;

3.     The entire investigation file for the December 23, 2008 loss;

4.    All claims notes for the December 23, 2008 loss;

5.    All photographs taken after the December 23, 2008 loss;

6.    All expert reports relating to the December 23, 2008 loss;

7.    All correspondence between you and your insured relating to the December 23, 2008 loss, its cause, or your insured's damages;

8.    All documents reflecting payments made by you to your insured that relate to the December 23, 2008 loss;

9.    Any and all "loan receipts" reflecting payments related to the December 23, 2008 loss;

10.    Any subrogation receipts or similar subrogation agreements relating to the December 23, 2008 loss; and

11.    Any documents reflecting your insured's uninsured damages (including its deductible) relating to the December 23, 2008 loss.

Travelers indicates it has produced all documents responsive to Request No. 9, has no documents responsive to Request Nos. 1 and 10, and that Plaintiff has already produced all documents responsive to Request Nos. 5 and 10.  As a result, Travelers does not apparently seek to quash these requests.  Travelers, however, maintains its objections to Request Nos. 2, 3, 4, 6, 7 and 8.  Accordingly, the Court will address only those requests in this Order.

**C.    Relevance and Over Breadth**

Travelers argues Request Nos. 2, 3, 4, 6, 7 and 8 are irrelevant.  Over breadth and irrelevance

are not contained within Rule 45's list of enumerated reasons for quashing a subpoena. It is well settled, however, the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34.[105] The court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards as set forth in Rule 26(b) and as applied to Rule 34 requests for production.[106]

Request Nos. 2, 3, 4, 6, 7, and 8 are facially relevant and not overly broad for the same reasons discussed in analyzing Defendant's Request for Production No. 5 in connection with Defendant's motion to compel. Specifically, these requests seek documents that are likely to contain information about the cause or suspected cause of the Occurrence and Plaintiff's damages, which are at issue in this case. Further, Travelers has not demonstrated these requests are overly broad.

### D. Attorney-Client Privilege and Work Product Doctrine

Travelers also objects that Request Nos. 2, 3, 4, 6, 7, and 8 seeks documents protected by the attorney-client privilege and/or work product doctrine.

Fed. R. Civ. P. 45(d)(2) states that a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."[107] This is similar to the language in Fed. R. Civ. P. 26(b)(5)(A), which governs a claim of privilege or protection of trial preparation

---

[105] *Stewart v. Mitchell Transport*, No. 01-2546-JWL, 2002 WL 1558210, at *3 (D. Kan. July 8, 2002).

[106] *Id*.

[107] Fed. R. Civ. P. 45(d)(2).

materials by a party. The purpose of this rule is to provide a party whose discovery is constrained by a claim of privilege or work product with information sufficient to evaluate that claim and to resist it if that seems unjustified.[108] The person claiming a privilege or work product protection cannot decide the limits of that party's own entitlement.[109]

Travelers has not prepared a privilege log, either in response to the subpoena or in connection with this motion. Travelers argues it is not required to create a privilege log because it would be highly burdensome to do so, considering the broad nature of Defendant's requests. Travelers, however, has not supplied this Court with *any* information about the volume of documents sought in these requests or the time and/or expense involved in locating the documents. As a result, the Court does not have sufficient information to conclude that compiling a privilege log would be unduly burdensome.[110] Accordingly, the Court overrules this objection.

A privilege log, however, is not always necessary as long as the opposing party and the court can assess whether the claimed privilege applies to the documents.[111] Travelers, as the objecting entity, bears the burden of establishing that the attorney-client privilege or work product doctrine applies to the subpoenaed documents.[112] To carry that burden, it must describe in detail the

---

[108] Fed. R. Civ. P. 45(d)(2) advisory committee's note.

[109] *Id.*

[110] *See Phalp v. City of Overland Park, Kansas*, No. 00-2354-JAR, 2002 WL 1162449, at *2 n.2 (D. Kan. May 8, 2002) (rejecting argument that creating a privilege log was unduly burdensome because entity objecting to subpoena did not provide the court with any information about the time and expense involved in locating the documents at issue).

[111] *Farha v. Idbeis*, No. 09-1059-JTM, 2010 WL 3168146, at *4 n.11 (D. Kan. Aug. 10, 2010).

[112] *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 661 (D. Kan. 2003).

documents or information to be protected and precise reasons for the objection to discovery.[113]

In the instant motion, Travelers states that its claims file, investigation file, and claims notes contain correspondence with its counsel concerning the loss and potential recovery efforts against responsible third-parties. Travelers, however, has not provided any affidavits or any other evidence to support this claim.[114] Morever, not every communication between an attorney and client is privileged; only confidential communications made for the purpose of seeking or giving legal advice are protected.[115] Travelers has made no showing that the purpose of the allegedly protected communications was to give or seek legal advice. Further, the Court has no information about who authored the purportedly privileged documents, all recipients of those documents, the dates the documents were created, or a detailed description of the documents sought to be protected. As a result, Travelers has failed to meet its burden to clearly show that the attorney-client privilege applies to any of the subpoenaed documents.

Travelers also objects that Request Nos. 2, 3, 4, 6, 7, and 8 seek documents protected by the work product doctrine. Travelers indicates it initially investigated the claim presented to it by Plaintiff and prepared for subrogation litigation against Defendant. It indicates that as early as the day of the loss, it was aware that the damage was caused by a third-party. Thus, it contends that any documents prepared after the day of the loss – December 23, 2008 – were prepared in anticipation

---

[113] *Id.*

[114] *See Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994) (stating that the party seeking to establish the privilege must make an evidentiary showing based on competent evidence); *Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 539 (D. Kan. 1989) (holding that plaintiff did not meet his burden to establish work product protection because he relied on bare conclusions, unsupported by affidavit or other specific explanation).

[115] *See* K.S.A. 60-426 (listing elements of privilege under Kansas law); *see also New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 443 (D. Kan. 2009).

of litigation. Travelers essentially seeks to shield its entire claims and investigation files from production.

There are two components in determining whether documents are prepared "in anticipation of litigation."[116] The first is the causation requirement – the document in question must have been created because of the anticipation of litigation, i.e. to prepare for litigation or for trial.[117] The second component imposes a reasonableness limit on a party's anticipation of litigation – the threat of litigation must be "real" and "imminent."[118] Courts look to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product; materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine.[119] The doctrine is not intended to protect work prepared in the ordinary course of business or investigative work unless it was done so under the supervision of an attorney in preparation "for the real and imminent threat of litigation or trial."[120]

Even if this Court credits Travelers' unsupported statements that it anticipated litigation with a third-party as early as the day of the loss, Travelers has not shown that the documents were prepared "because" of litigation. The fact that a party anticipates litigation does not make all documents thereafter generated subject to work product protection.[121] A party claiming work

---

[116] *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998).

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] *Id.*

[121] *See id.* at *11.

product protection must still establish that the document was prepared principally or exclusively to assist in anticipated or ongoing litigation.[122] As explained in *Zullig v. Kansas City Power & Light Co.*:

> "The mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is producible . . . . The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product. . . . [T]he primary motivating purpose behind the creation of a document or investigative report must be to aid <u>in</u> possible future litigation."[123]

Travelers has not demonstrated that any specific documents contained within the insurance claims and investigation files were created "because of" litigation, rather than for processing Plaintiff's claim. Traveler's has not provided any information about who specifically within its organization was aware of the possibility of litigation, how and when that individual or individuals came to this understanding, who prepared the documents sought to be protected, at whose direction those documents were prepared, the purpose of creating the documents, or any description of the purportedly protected documents.[124] Accordingly, Travelers has not provided the Court with

---

[122] *Id.*

[123] *Zullig v. Kansas City Power & Light Co.*, No. 87-2342, 1989 WL 7901, at *4 (D. Kan. Jan. 17, 1989) (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982)).

[124] *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005) (internal quotations omitted) (describing required contents of privilege log); *see also FTC v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980) (indicating that a party is required to assert its claim of the work product privilege on a document-by-document basis and may not rely upon a blanket claim of privilege for all documents contained in its files).

sufficient information to determine whether any of the subpoenaed documents are subject to work product protection.

It has been over two months since Defendant served its subpoena on Travelers. Travelers is represented by the very same attorney who represents Plaintiff in this case. Thus, Travelers would have been on notice that Defendant was seeking these documents when Defendant served its First Request for Production of Documents on Plaintiff in March 2010. Travelers has had adequate time within which to complete a privilege log or otherwise provide the Court and Defendant with sufficient information to assess whether the claimed privileges apply. Although it is possible that the attorney-client privilege and/or work product doctrine could protect some of the subpoenaed documents from disclosure, Travelers has not met its burden to demonstrate the applicability of these privileges. As a result, the Court overrules Traveler's objections based upon the attorney-client privilege and work product doctrine.

Accordingly,

**IT IS THEREFORE ORDERED** that Travelers Insurance Company's Motion to Quash Defendant SimplexGrinnell, L.P.'s Subpoena to Produce Documents (Doc. 35) is hereby denied. Compliance with the subpoena shall be made within ten (10) days of this Order.

**IT IS SO ORDERED.**

Dated this 28th day of September, 2010 at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge